WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA


KAREN MARLENE PONTZIOUS,          )
                                  )
                    Plaintiff,    )
                                  )
        vs.                       )
                                  )
NANCY A. BERRYHILL, Acting        )
Commissioner of the Social Security )
Administration,                   )
                                  )
                                  )          No. 3:16-cv-8274-HRH
                    Defendant.    )          (Prescott Division)
_____)


### O R D E R

This is an action for judicial review of the denial of disability benefits under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  Plaintiff Karen Marlene Pontzious has

timely filed her opening brief,[1] to which defendant, Nancy A. Berryhill, the acting

Commissioner of the Social Security Administration, has responded.[2]  Oral argument was not

requested and is not deemed necessary.

### Procedural Background

On May 11, 2012, plaintiff filed an application for disability benefits under Title XVI

of the Social Security Act.  Plaintiff originally alleged that she became disabled on March

_____

[1]Docket No. 22.

[2]Docket No. 26.

1, 2005.  However, this date was later amended to May 11, 2012.  Plaintiff alleges that she is disabled due to rheumatoid arthritis, ADHD, depression, chronic pain, insomnia, and anxiety.  Plaintiff's application was denied initially and on reconsideration.  After an administrative hearing on January 9, 2015, the administrative law judge (ALJ) denied plaintiff's claims.  On September 19, 2016, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 10, 2015 decision the final decision of the Commissioner.  On November 18, 2016, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

## General Background

Plaintiff was born on January 23, 1961.  She was 51 years old on the date her benefits application was filed.  Plaintiff has a high school education.  Plaintiff's past relevant work includes work as a nurse assistant and a dorm counselor.

## The ALJ's Decision

The ALJ applied the five-step sequential analysis used to determine whether an individual is disabled.[3]

---

[3]The five steps are as follows:

Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
Step two:  Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since May 12, 2012, the application date...."[4]

At step two, the ALJ found that plaintiff had "the following severe impairments: cervical and lumbar degenerative disc disease; arthritis; depression; and anxiety."[5] The ALJ found plaintiff's fracture of the tip of her sacrum, bursitis, and urinary frequency non-severe.[6]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[7] The ALJ considered Listings 1.04 (disorders

---

[3](...continued)
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, sub pt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[4]Admin. Rec. at 34.

[5]Admin. Rec. at 34.

[6]Admin. Rec. at 34.

[7]Admin. Rec. at 34.

of the spine), 14.09 (arthritis), 12.04 (affective disorder), and 12.06 (anxiety related disorders). The ALJ considered the "paragraph B" criteria and found that plaintiff had mild restriction in activities of daily living; moderate difficulties in social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation, which had been of extended duration.[8] The ALJ also found that the "paragraph C" criteria had not been met.[9]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that she is limited to frequent climbing of ramps and stairs, balancing, stooping, crouching, kneeling and crawling but no climbing ladders, ropes, and scaffolds; she should avoid concentrated exposure to nonweather related extreme cold and heat, excessive vibration, dangerous machinery with moving or mechanical parts, and unprotected heights that are high or exposed; she is limited to simple, routine, and repetitive tasks; and she is further limited to minimal interaction with the public and only occasional interaction with co-workers and supervisors, but she can still be in the vicinity of others.[[10]]

The ALJ found plaintiff's pain and symptom statements less than credible because they were not supported by the objective medical evidence, because her impairments have

---

[8]Admin. Rec. at 35-36.

[9]Admin. Rec. at 36.

[10]Admin. Rec. at 36.

been managed with conservative treatment, because of noncompliance with treatment, because of a gap in treatment from 2010 to 2012 for her mental impairments, because her mental impairments improved with treatment, and because her statements were inconsistent with her reported daily activities.[11]   The ALJ also found plaintiff's pain and symptom statements less than credible because of plaintiff's sporadic work history and because "[h]er testimony and presentation has been vague, exaggerated, and inconsistent."[12]

The ALJ gave significant weight[13] to the opinions of Dr. Disney[14] and Dr. Bargan.[15] The ALJ gave some weight[16] to the opinion of Dr. Baugh.[17]  The ALJ gave partial weight to

---

[11]Admin. Rec. at 37-39.

[12]Admin. Rec. at 41.

[13]Admin. Rec. at 39.

[14]On November 19, 2012, Dr. Disney opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for 6 hours; could sit for 6 hours; was unlimited as to pushing/pulling; could frequently climb ramps/stairs/ladders/ ropes/scaffolds, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold and heat, vibration, and hazards.  Admin. Rec. at 91-93.

[15]On July 3, 2013, Dr. Bargan opined that plaintiff could occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; could stand/walk for 6 hours; could sit for 6 hours; was unlimited as to pushing/pulling; could frequently climb ramps/stairs/ ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to extreme cold and heat, vibration, and hazards.  Admin. Rec. at 116-117.

[16]Docket No. 41.

[17]Jonathan Baugh, DO, examined plaintiff on October 26, 2012 and opined that plaintiff could occasionally lift/carry 20 pounds, could frequently lift/carry 10 pounds, could stand/walk for 6 hours, had no limitations as to sitting; and could frequently climb, balance,
(continued...)

the opinion of Dr. Cano.[18]  The ALJ gave minimal weight to the opinion of Dr. Stonecipher.[19]

The ALJ gave minimal weight to the opinions of Dr. Joseph and Dr. Tromp.[20]  The ALJ gave

little weight[21] to the opinion of Dr. Emery[22] and minimal weight[23] to plaintiff's GAF scores.[24]

The ALJ did not mention the opinion of Dr. Zuess.[25]  The ALJ also did not mention Dr.

---

[17](...continued)
stoop, kneel, crouch, crawl, reach, handle, finger, and feel.  Admin. Rec. at 671-672.

[18]Admin. Rec. at 39.  On June 23, 2013, Efren Cano, DO, examined plaintiff and opined that plaintiff did not have any conditions that would impose any limitations for 12 continuous months.  Admin. Rec. at 783.

[19]Docket No. 40.  Dr. Stonecipher's opinion is discussed below in detail.

[20]Admin. Rec. at 39.  Dr. Joseph's and Dr. Tromp's opinions are discussed below in detail.

[21]Admin. Rec. at 40.

[22]On April 23, 2013, Dr. Emery opined that plaintiff had "significant limitations in basic work related abilities" because she was "SMI status within Diagnostic guidelines" and had a "GAF of 40."  Admin. Rec. at 702.

[23]Admin. Rec. at 40.

[24]Admin. Rec. at 40.  Besides Dr. Emery's GAF score, plaintiff had GAF scores of 45 on June 19, 2012; October 10, 2012; and June 23, 2014; and a GAF score of 55 on March 4, 2010.  Admin. Rec. at 449, 663, 748, 820.

[25]On October 16, 2012, Jonathan Zuess, M.D., opined that plaintiff was moderately limited in her ability to understand/remember/carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting.  Admin. Rec. at 93-95.

Downs' opinion.[26]  The ALJ gave minimal weight[27] to the lay testimony of plaintiff's cousin.[28]

At step four, the ALJ found that plaintiff was "unable to perform any past relevant work...."[29]

Ast step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,]" including routing clerk, marker, and cleaner/housekeeper.[30]  This finding was based on the testimony of the vocational expert.[31]

The ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since May 11, 2012, the date the application was filed...."[32]

---

[26]On July 3, 2013, Mary Downs, Ph.D., opined that plaintiff was moderately limited in her ability to remember/understand/carry out detailed instructions; maintain attention and concentration for extended periods; work in coordination with or in proximity to others without being distracted by them; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and respond appropriately to changes in the work setting.  Admin. Rec. at 118-120.

[27]Admin. Rec. at 40.

[28]Rodger Plummer completed third party function reports on July 31, 2012 and April 14, 2013.  Admin. Rec. at 239-246, 295-303.

[29]Admin. Rec. at 41.

[30]Admin. Rec. at 42.

[31]Admin. Rec. at 42.  Scott Nielson testified as the vocational expert.  Admin. Rec. at 70-78.

[32]Admin. Rec. at 42.

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'"  Id. (quoting Andrews, 53 F.3d at 1039).  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision.  Id.  But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'"  Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in rejecting Dr. Stonecipher's opinion.  On January 5, 2015, Dr. Stonecipher opined that plaintiff could occasionally lift/carry 20 pounds; could frequently lift/carry 10 pounds; could stand/walk for less than 2 hours; could sit for six

hours; would need to alternate sitting and standing very frequently; could never climb, balance, kneel, crouch, or crawl; could occasionally stoop, handle, do fine manipulation, feel, and reach; and should avoid heights and moving machinery.[33]  Dr. Stonecipher also opined that plaintiff had moderately severe pain which would constantly interfere with attention and concentration and would result "in [a] failure to complete tasks in a timely manner (in work settings or elsewhere)[.]"[34]

Dr. Stonecipher was a treating physician.  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  "At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons."  Id. (quoting Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)).  "[I]f the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing."  Id. (quoting Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).  Dr. Stonecipher's opinion was contradicted by Dr. Disney's and Dr. Bargan's opinions; so, the ALJ was required to give specific and legitimate reasons for rejecting his opinion.  Plaintiff argues that none of the reasons given by the ALJ were legitimate.

---

[33]Admin. Rec. at 893-895.

[34]Admin. Rec. at 896-897.

The first reason given by the ALJ was that Dr. Stonecipher's opinion was not consistent with the other medical evidence of record, including his own treatment notes. The ALJ noted that Dr. Stonecipher's treatment notes reflected that plaintiff's symptoms seem to be well controlled.[35] The ALJ cited to an October 1, 2014 treatment note in which Dr. Stonecipher noted that plaintiff's rheumatoid arthritis "seems well controlled" with methotrexate[36] and a January 23, 2014 treatment note from a provider other than Dr. Stonecipher that does not state, one way or another, whether plaintiff's symptoms were well controlled.[37] The ALJ's reference to a single treatment note from Dr. Stonecipher is insufficient support for the ALJ's finding that Dr. Stonecipher's opinion was inconsistent with his treatment notes. The ALJ also did not explain exactly how Dr. Stonecipher's opinion was inconsistent with his treatment notes but rather simply concluded that it was. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998). The first reason given by the ALJ was not legitimate.

The second reason given by the ALJ for rejecting Dr. Stonecipher's opinion was that it "appears largely sympathetic and based on the claimant's subjective complaints...."[38] This

---

[35]Admin. Rec. at 40.

[36]Admin. Rec. at 850.

[37]Admin. Rec. at 865.

[38]Admin. Rec. at 40.

was not a legitimate reason because an "ALJ 'may not assume that doctors routinely lie in order to help their patients collect disability benefits.'" Davis v. Colvin, Case No. CV-13-00679-TUC-CRP, 2015 WL 5730581, at *5 (D. Ariz. Sept. 30, 2015) (quoting Lester 81 F.3d at 832). "While the Commissioner may introduce evidence of actual improprieties, the ALJ cited no such evidence here and none is apparent in the record." Id. In addition, basing a medical opinion, at least in part, on the patient's subjective complaints "hardly undermines [the] opinion as to [the patient's] functional limitations, as '[a] patient's report of complaints, or history, is an essential diagnostic tool.'" Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) (quoting Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997)).

The third reason given by the ALJ for rejecting Dr. Stonecipher's opinion was that he did not provide any explanation for his opinion "as it is set forth on a standard form."[39] This was not a legitimate reason because a check-the-box form may be supported by a physician's treatment notes. Garrison v. Colvin, 759 F.3d 995, 1013 (9th Cir. 2014). Dr. Stonecipher's three years of treatment notes[40] provide adequate support for his opinion as these notes show that plaintiff had ongoing symptoms of joint pain, neck pain and back pain with radiculopathy for which she was prescribed significant pain medications. Moreover, the Ninth Circuit has noted that "there is no authority that a 'check-the-box' form is any less reliable than any other type of form; indeed, agency physicians routinely use these types of

---

[39]Admin. Rec. at 40.

[40]Admin. Rec. at 601-616, 618-633, 643-646, 842-854.

forms to assess the intensity, persistence, or limiting effects of impairments." Trevizo v. Berryhill, 871 F.3d 664, 677 n.4 (9th Cir. 2017).

The fourth reason given by the ALJ was that Dr. Stonecipher did not "have a long term treating relationship" with plaintiff.[41]  This was not a legitimate reason because Dr. Stonecipher treated plaintiff over a three-year period during which he saw her ten times.

The fifth reason given by the ALJ was that Dr. Stonecipher was a general practitioner rather than a specialist.[42]  "While this fact alone is not a reason to reject a [medical] assessment, it is true that more weight generally is given to the opinion of a specialist about issues within that specialist's area of expertise than to the opinion of a source who is not a specialist." Stivers v. Colvin, Case No. 3:15-cv-00270-BAS-NLS, 2016 WL 8731091, at *10 (S.D. Cal. Jan. 15, 2016) (citation omitted).  Here, there were no opinions from any specialists that were contrary to Dr. Stonecipher's opinion.  But even if this were a legitimate reason, it was the only legitimate reason given by the ALJ for rejecting Dr. Stonecipher's opinion and thus it provides insufficient support for the ALJ's rejection of Dr. Stonecipher's opinion.

Plaintiff next argues that the ALJ erred in rejecting Dr. Joseph's and Dr. Tromp's opinions.  Dr. Joseph examined plaintiff on October 10, 2012.  He opined that plaintiff

> is likely to respond to minimal stress with a high level of
> emotionality, anxiety and uncontrolled crying.  As a result, she

---

[41]Admin. Rec. at 40.

[42]Admin. Rec. at 40.

will have difficulty with short term memory. Ms. Pontzious would likely require frequent repetition of instruction to learn new detailed tasks. Because of high levels of anxiety and emotionality, Ms. Pontzious would have considerable difficulty maintaining attention and concentration on work-related tasks. She is likely to find this frustrating and distressing and in turn experience continuing or higher levels of emotionality. In my opinion Ms. Pontzious' primary barrier to maintaining employment is emotional instability. She exhibits very limited stress tolerance and is likely to respond to an addition of minimal stress with significant anxiety, reaching panic levels at times and uncontrolled crying. She would likely respond to corrective feedback by feeling unfairly singled out for mistreatment. She is likely to respond defensively, with irritability and agitation. I do not believe Ms. Pontzious would be capable of maintaining emotional stability and appropriate social behavior in the typical work setting. Because of distraction associated with anxiety and generalized emotionality, in ... the best of circumstances Ms. Pontzious would be slow to recognize and respond to workplace hazards. She is likely to respond to crisis or emergency situations with a high level of anxiety and confusion. I do not believe she would be capable of making quick decisions and exercising good judgment in such circumstances.[43]

Dr. Tromp evaluated plaintiff on June 6, 2013. She opined that plaintiff's

anxiety, tearfulness and agitation will likely impact her memory and comprehension for anything other than simple tasks. ... Her anxiety and emotional lability will likely interfere [with sustained concentration and persistence.] ... [S]he would have trouble interacting socially in any setting. She is too easily upset and she becomes tearful, loud and agitated easily. She seems to escalate on her own unless redirected. She has poor stress tolerance, persecutory ideation, and is highly agitated and may overreact or react with excessive anxiety, which may lead to

---

[43]Admin. Rec. at 663-664.

confusion.[44]

"[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830–31. Plaintiff argues that none of the reasons given by the ALJ for rejecting Dr. Joseph's and Dr. Tromp's opinions, which the ALJ considered together, were legitimate reasons supported by substantial evidence.

The first reason the ALJ gave for rejecting Dr. Joseph's and Dr. Tromp's opinions was that "[t]heir assessments are based on one examination during which they both appeared to rely heavily on the claimant's subjective complaints and presentation. It is noted that at both examinations she was agitated and weeping, whereas at other times she was noted to be calm...."[45] This was not a legitimate reason. First of all, if rejecting an examining physician's opinion simply because the doctor only saw the claimant once was a legitimate reason, then there would be no role for examining physician's opinions in the Social Security disability regime, which is not the case. ALJs often rely on examining physicians' opinions when assessing the functional capacity of claimants. In addition, as discussed above, basing a medical opinion, at least in part, on the patient's subjective complaints "hardly undermines [the] opinion as to [the patient's] functional limitations, as '[a] patient's report of complaints,

---

[44]Admin. Rec. at 767.

[45]Admin. Rec. at 39.

or history, is an essential diagnostic tool.'" <u>Green-Younger</u>, 335 F.3d at 107 (quoting

<u>Flanery</u>, 112 F.3d at 350). Moreover, it was not clear why the ALJ was troubled by the fact

that plaintiff was agitated and weeping during her exams, but was reported to be calm during

other exams. It is also worth noting that both Dr. Joseph and Dr. Tromp considered

plaintiff's credibility and found her credible. Dr. Joseph noted that plaintiff

> appeared to give an honest effort to provide information. She
> was very irritable and agitated; and became defensive when
> asked for clarification on interview questions. She initially said
> her anxiety and depression began in 2005; after she was
> diagnosed with rheumatoid arthritis. She later described
> anxiety[,] depression, uncontrolled crying occurring following
> her son's death in 1998 and after her father was diagnosed with
> cancer in 2001. These inconsistencies appeared to be a matter
> of lack of insight and being a poor historian; rather than
> purposeful inconsistency.[46]

Dr. Tromp "agree[d] with Dr. Joseph that [plaintiff was] genuine and sincere and that her

difficulty with self report is the result of limited insight and intense focus on her distress. It

does not appear purposeful."[47]

The second reason the ALJ gave for rejecting Dr. Joseph's and Dr. Tromp's opinions

was that their "findings are inconsistent with the overall record, indicating that the claimant

has realized improvement in her symptoms with medication and that, despite disabling

---

[46]Admin. Rec. at 662.

[47]Admin. Rec. at 766.

symptoms, she has been noncompliant with treatment."[48]  This was not a legitimate reason.

As to the ALJ's finding that plaintiff's mental health improved with treatment, the ALJ cited to an August 16, 2012 Verde Valley Guidance treatment note that indicated that plaintiff was "[d]oing much better on increased zoloft"[49] and a July 25, 2013 Verde Valley Guidance treatment note that "prozac seems to be helpful[.]"[50]  But this is insufficient evidence to support the ALJ's finding, particularly given that there are three years of mental health treatment notes that show that plaintiff's symptoms varied over time.

As for the ALJ's finding that plaintiff had not been compliant with treatment, the ALJ cited to treatment notes from Verde Valley Guidance that indicated that plaintiff decided on her own to stop taking some of her medication,[51] that plaintiff had no-showed for appointments,[52] and that plaintiff's service attendance was poor and her level of engagement was poor.[53]  However, the Ninth Circuit has observed that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted).

---

[48]Admin. Rec. at 39.

[49]Admin. Rec. at 727.

[50]Admin. Rec. at 811.

[51]Admin. Rec. at 487, 510, 523.

[52]Admin. Rec. at 529-533.

[53]Admin. Rec. at 821.

Thus, the ALJ's finding that plaintiff was noncompliant with mental health treatment does not constitute substantial evidence supporting the ALJ's rejection of the opinions of Drs. Joseph and Tromp.

The third reason the ALJ gave for rejecting Dr. Joseph's and Dr. Tromp's opinions was that plaintiff "was not particular[ly] forthright with the examiners about her substance abuse and history, thus limiting their overall impression of the claimant."[54] Dr. Joseph noted that plaintiff "said following her son's death, in 1998, she began using methamphetamine. She continued using until she was charged with DUI in 2005. She completed court-ordered treatment and has been sober since that time. She denied any issues with alcohol or other drugs."[55] Dr. Tromp noted that plaintiff denied current substance abuse but that "[i]n the past she used cannabis for years but has not used since 1998. She also used crystal meth for a couple of years, and the last time was in 2005. She denies any other substance abuse."[56] Yet as the ALJ noted, plaintiff had admitted to using methamphetamine once in May 2012[57] and she tested positive for marijuana once in 2013.[58]

_____

[54]Admin. Rec. at 39.

[55]Admin. Rec. at 662.

[56]Admin. Rec. at 764.

[57]Admin. Rec. at 63.

[58]Admin. Rec. at 877.

These inconsistencies were not a legitimate reason to reject Dr. Joseph's and Dr. Tromp's opinions. The ALJ seemed to believe that if Dr. Joseph and Dr. Tromp had known that plaintiff had been less than honest about her drug use, then they might have reached different opinions as to plaintiff's functional capacity. But this is pure speculation on the ALJ's part. And if the ALJ really had this concern, then she should have developed the record on this issue. "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). ""The ALJ's duty to develop the record fully is also heightened where the claimant may be mentally ill and thus unable to protect her own interests.'" Id. (quoting Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992)).

Finally, plaintiff argues that the ALJ erred in finding her pain and symptom statements less than credible. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison, 759 F.3d at 1014. "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the

symptom.'" Id. (quoting Smolen, 80 F.3d at 1282). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

The first reason given by the ALJ was that plaintiff's physical impairments had been managed with conservative treatment. The ALJ explained that plaintiff "has been maintained on a long-term pain medication regimen that has provided good control of her chronic pain" and that she had received epidural steroid injections and medial branch blocks that provided

some relief.[59]  This was not a clear and convincing reason because the record citations on

which the ALJ relied do not show that plaintiff had good control of her chronic pain.  The

ALJ cited to three treatment notes from Dr. Stonecipher, one of which stated that plaintiff's

chronic pain was under good control,[60] one of which said her pain control was okay,[61] and

one of which stated that plaintiff's lumbar pain was out of control.[62]  The ALJ also cited to

a treatment note from Dr. Bauman[63] that indicated that plaintiff's "medication management"

for her chronic pain "was not helpful"[64] and a treatment note from January 23, 2013 which

says nothing about pain control.[65]  In addition, epidural injections and medial branch blocks

are not conservative treatment.  Garrison, 759 F.3d at 1015 n.20 ("we doubt that epidural

steroid shots to the neck and lower back qualify as 'conservative' medical treatment").

    The second reason given by the ALJ was that plaintiff had "periods of noncompli-

ance...."[66]  This was not a clear and convincing reason for the same reasons as discussed

---

[59]Admin. Rec. at 38.

[60]Admin. Rec. at 610.

[61]Admin. Rec. at 625.

[62]Admin. Rec. at 628.

[63]Dr. Bauman did plaintiff's cervical epidural injections in 2012. Admin. Rec. at 361-371.

[64]Admin. Rec. at 385.

[65]Admin. Rec. at 689.

[66]Admin. Rec. at 41.

above in connection with Dr. Joseph's and Dr. Tromp's opinions.

The third reason given by the ALJ was that there was a gap in treatment from 2010 to 2012 for plaintiff's mental impairments.[67] This was not a clear and convincing reason. This gap in treatment was prior to the alleged onset of disability and thus it is irrelevant to veracity of plaintiff's symptom statements during the relevant period.

The fourth reason given by the ALJ was that plaintiff's mental impairments improved with treatment. The two Verde Valley treatment notes that the ALJ cited are discussed above in connection with Dr. Joseph's and Dr. Tromp's opinions. The ALJ also pointed out that "other treating sources have shown no symptoms of anxiety or depression, which tends to show that her symptoms are stable on her regimen...."[68] While other treating sources at times noted no symptoms of anxiety or depression at times,[69] there were times when other treating sources noted symptoms of anxiety or depression.[70] This was not a clear and convincing reason.

---

[67]Admin. Rec. at 839 (discharging plaintiff from treatment at Verde Valley Guidance on December 14, 2011, because she has stopped engaging in treatment).

[68]Admin. Rec. at 38.

[69]Admin. Rec. at 384 (plaintiff had normal mood and affect); 602 (plaintiff oriented to time, place, and person, with normal mood and affect); 690 (plaintiff had normal mood and affect).

[70]Admin. Rec. at 644 (plaintiff in "extreme distress, crying"); 668 (plaintiff "very anxious and crying during the entire examination and quite agitated").

The fifth reason given by the ALJ was that plaintiff's statements were inconsistent with her reported daily activities. The ALJ noted that plaintiff could drive, lived independently for part of the relevant time period, could "enter a store and make purchases", went to McDonald's 2-3 times per week, could perform light housework and prepare light meals, was remodeling her home, had 2-3 yard sales since 2012, and spent time with her grandchildren.[71] An "ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting[.]" Molina, 674 F.3d at 1113. But here, the ALJ did not explain how the activities to which she cited would be transferable to a work setting. Thus, this was not a clear and convincing reason.

The seventh reason given by the ALJ was that plaintiff had a sporadic work history. While an ALJ may consider a claimant's poor work history when assessing credibility. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002), this was not a clear and convincing reason in this case. Plaintiff's sporadic work history[72] is consistent with her poor emotional/mental state.

The eighth reason given by the ALJ was that plaintiff's "testimony and presentation has been vague, exaggerated, and inconsistent."[73] In particular, the ALJ stated that plaintiff was "observed as crying and anxious at consultative examinations" but that "similar

---

[71]Admin. Rec. at 38-39.

[72]Admin. Rec. at 222-223.

[73]Admin. Rec. at 41.

observations are not seen with her treating providers and while under surveillance."[74]  This was not a clear and convincing reason.  As noted above, plaintiff was tearful and anxious when presenting at other treatment providers and the surveillance only shows that plaintiff could go into a store and a fast food restaurant.  The ALJ also noted plaintiff's inconsistent statements about her drug use,[75] which by themselves, may have been a clear and convincing reason to find plaintiff's statements less than credible were it not for Dr. Joseph's and Dr. Tromp's explanations that plaintiff's inconsistencies as to her history were a function of her mental impairments.

Finally, the ALJ found that plaintiff's pain and symptom statements were not consistent with the objective evidence of record.  "[L]ack of medical evidence cannot form the sole basis for discounting pain testimony[.]"  Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).  Even assuming that this was a legitimate reason, it would be insufficinet support for the ALJ's credibility finding given that other reasons given by the ALJ were not clear and convincing.

Because the ALJ erred in rejecting the opinions of Drs. Stonecipher, Joseph, and Tromp and as to plaintiff's credibility, the court must determine whether to remand this

---

[74]Admin. Rec. at 41.  On May 20, 2013, the CDI unit received a request for an investigation from the state disability office due to "multiple inconsistencies found in PONTZIOUS's records regarding her functional ability, psychological history, work history and history of drugs and/or alcohol."  Admin. Rec. at 772.  "The referral was based on the suspicion that PONTZIOUS was exaggerating the extent of her impairments in an attempt to manipulate the disability process."  Admin. Rec. at 772.

[75]Admin. Rec. at 41.

matter for further proceedings or for an award of benefits. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)

If the ALJ erred as to Dr. Stonecipher's opinion, no further proceedings are necessary. The vocational expert testified that a person with the limitations assessed by Dr. Stonecipher would be unable to sustain full-time employment.[76] Likewise, no further administrative proceedings would be necessary if the ALJ erred as to Dr. Joseph and Dr. Tromp's opinions. The vocational expert testified that there would be no work for a hypothetical person who

---

[76]Admin. Rec. at 75-76.

"has such extreme anxiety and emotional [lability] that ... they would be a severe distraction to others on the job. They cannot maintain persistence or pace for any tasks. Any stress or ... instruction or correction from supervisors would likely [cause] uncontrolled crying."[77] Thus, a remand for an award of benefits is warranted in this case.

Conclusion

The opinion of the Commissioner is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 8th day of December, 2017.

/s/ H. Russel Holland
United States District Judge

---

[77]Admin. Rec. at 77.